IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| SHAWN CLAWSON, | CV 23-76-H-DWM |
| Petitioner, | |
| vs. | ORDER |
| WARDEN RYAN F. THORNELL,[1] ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

State pro se petitioner Shawn Clawson ("Clawson") filed an application

under 28 U.S.C. § 2254, seeking habeas corpus relief. (Doc. 1.)  The petition was

deemed filed on November 2, 2023.  (*Id.* at 8.)  Clawson was subsequently ordered

to show cause why his petition should not be dismissed as time-barred and

procedurally defaulted and was advised of the relevant legal standards.  (*See* Doc.

4.)  Clawson timely responded to the show cause order.  (Doc. 5.)

This Court is required to screen all actions brought by prisoners who seek

relief.  28 U.S.C. § 1915(a).  The Court must dismiss a habeas petition or portion

thereof if the prisoner raises claims that are legally frivolous or fails to state a basis

---

[1] Clawson is currently incarcerated in Arizona under an Interstate Compact Agreement.  Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, a state prisoner seeking federal habeas relief must name as respondent the person having custody of him.  *See Magwood v. Patterson*, 561 U.S. 320, 333 (2010).  Warden Thornell is his current custodian and the proper respondent.

upon which relief may be granted.  28 U.S.C. § 1915A(b)(1), (2).  For the reasons discussed herein, Clawson's petition is dismissed.

## I.      Request for Appointed Counsel

Clawson requests counsel be appointed to represent him and explains he has limited legal knowledge and no ability to research the complex nature of this matter.  (Doc. 5 at 24-5.)  He indicates the "jailhouse lawyers" are discouraged from providing more than cursory support and he lacks the resources to litigate and investigate effectively.  (*Id.*)

There is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson*, 501 U.S. 722, 755 (1991).  A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or if an evidentiary hearing is required.  *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases.  Counsel may be appointed at any stage of the proceedings if "the interests of justice so require."  28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B).  Under § 3006A, a court must consider the likelihood of success on the merits, the complexity of the legal issues involved, and the petitioner's ability to articulate his claims pro se.  *Weygandt v. Look,* 718 F.2d 952, 954 (9th Cir. 1983) (per curiam).

To date, Clawson has been able to adequately present his claims and to respond to the narrow issues of timeliness and default.  Accordingly, he has been

able to protect his interests.  Additionally, neither discovery nor an evidentiary

hearing is warranted in this case.  Because Clawson, like many habeas petitioners,

lacks legal training and resources, the Court independently reviews each petition.

Clawson does not require counsel as a matter of due process, and the Court

declines to exercise its discretion to appoint counsel.  The request for counsel is

denied.

## II.    Factual/Procedural History

The Montana Supreme Court summarized the factual background of

the underlying offenses as follows:

> The victim, L.B., lived in Helena, Montana. Near midnight, on June 10, 1988, L.B. received a phone call from a man stating that he had borrowed some car parts and tools from her husband and wanted to return them that night. L.B. felt uneasy because of the call and called her husband who was working in the state of Idaho. He did not recall loaning tools to anyone. Her husband called later to make sure she was all right. He also asked a male friend, Mr. E., in Helena to check on L.B.
>
> Mr. E. called L.B. shortly after the call from her husband. While he was talking to her, the defendant burst into the house through a bedroom window. L.B. testified that she recognized defendant as the man who had come to her home a week earlier requesting a tour of it because it was for sale, and also as the man who made the phone call earlier that night. As he approached her, she screamed "Oh no, Oh no." Defendant put a knife to L.B.'s throat and then hung up the phone. He forced her to leave clad only in a nightshirt and without slippers, and took her to his car several blocks away. She made several unsuccessful escape attempts.
>
> Because there are no significant factual issues raised by the defendant we will not detail the very extensive criminal conduct of the defendant

which extended over a period of many hours, starting after 1:00 a.m. Beginning in a vacant bus near her home and then continuing in various locations around the city, defendant repeatedly committed acts of sexual intercourse without consent on L.B., and in addition, by force required her to take part in various deviate sexual acts. Defendant repeatedly tortured L.B., choked her a number of times, burned her body with cigarettes and beat her physically with a club. Finally, after driving L.B. several miles out of town, defendant slammed her head into a rock and stabbed her 15 times in her chest and abdomen.

…

Because of his fear of being caught, defendant concocted a story for L.B. to tell Mr. E. in order to explain why she hung up on him. Defendant forced L.B. to call Mr. E. and to relay the story about friends with whom she left to go drinking in Butte. L.B. attempted to tip off Mr. E. by asking questions about his wife although he was unmarried. Mr. E. had already called the police and sent them to L.B.'s home. Defendant also forced L.B. to call the police with the same phony story. As dawn approached, the defendant became nervous and drove L.B. out of Helena into the foothills near Canyon Ferry. He stopped when L.B. said that she had to go to the bathroom.

L.B. testified that she next awoke in the bottom of a ravine, clad in only her nightshirt, and bleeding from her wounds. She testified that she did not move at all that day because she was not strong enough to get up. At dusk she walked for about half an hour, and during that night alternated between walking and sleeping. Cactus spines punctured her bare feet. In the morning she slowly made her way out of the ravine to a road. Two people in a pickup truck drove past and saw her sitting on the side of the road with blood on her head. They rushed her to the hospital, where it was discovered she had been stabbed 15 times in her chest and abdomen. The hospital physician who treated L.B. testified that she had several "potentially fatal stab wounds," had lost a "minimum of 25% of her blood volume," and that her head wounds would have been potentially fatal had they not "occurred on a particularly hard portion of the skull." He testified that L.B. probably would not have survived more than a few hours, had she not been rescued.

4

*State v. Clawson*, 239 Mont. 413, 415–16, 781 P.2d 267, 269–70 (Mont. 1989).

Following a jury trial in Montana's First Judicial District, Lewis and Clark County, Clawson was found guilty of Aggravated Kidnapping, Sexual Intercourse without Consent, and Attempted Deliberate Homicide. *Id.* at 414. An Aggravated Assault charge was dismissed. *Id.* Clawson was sentenced to 100 years for Aggravated Kidnapping, 100 years for Attempted Deliberate Homicide, 40 years for Sexual Intercourse without Consent, 100 years as a Persistent Felony Offender, and 10 years for the use of a weapon. The sentences were ordered to run consecutively, giving Clawson a net 350-year sentence. *Id.* at 414–15.

On appeal Clawson argued: (1) Sexual Intercourse without Consent is a lesser included offense of Aggravated Kidnapping and, therefore, the Aggravated Kidnapping charge should have been dismissed; (2) the trial court erred by not finding the offense of Deliberate Homicide was impliedly repealed by the then-newly enacted offense of Criminal Endangerment; and (3) the prosecution's discussion of punishment in its rebuttal closing argument warranted a mistrial. *Id.* at 415. On October 19, 1989, the Montana Supreme Court affirmed Clawson's convictions and sentence. *Id.* at 424.

Although Clawson indicates he filed a postconviction petition in the state district court in 2022, he provides the same cause number as the underlying criminal case. (Doc. 1 at 3, 10.) He also seems to suggest a separate petition was

5

filed on an earlier date.  (*Id.* at 12.)  The Lewis and Clark County Clerk of Court has no record of Clawson filing for collateral relief in their Court from 1993 to the present.  This court may take judicial notice of proceedings in other courts, within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue. *Tigueros v. Adams*, 658 F. 3d 983, 987 (9th Cir. 2011). Clawson indicates he did not file a state petition for writ of habeas corpus.  (Doc. 1 at 4.)

### III.   Clawson's Claims

Clawson asserts (1) he is actually innocent and his Fifth and Fourteenth amendment rights have been violated, (*id.* at 4, 13-17), and (2) trial counsel provided ineffective assistance in violation of the Sixth Amendment.  (*Id.* at 5, 17-18.)  Clawson asks this Court to reverse his convictions and sentence and release him from prison.  (*Id.* at 7.)

### IV.   Analysis

### A.   Rule 60(b)

As a preliminary matter, Clawson suggests that Rule 60(b) of the Federal Rules of Civil Procedure provides an avenue for this Court to "override the exhaustion or procedural default barriers where newly discovered evidence exists of a miscarriage of justice that given the circumstances in this case could not have been in a timely fashion discovered or presented in time to move for a new trial."

6

(Doc. 5 at 5.)  Rule 60(b) provides relief from final judgment, order, or proceeding in certain circumstances, however, Clawson is not challenging a final judgment of this Court.  Rather, he is challenging a judgment of conviction handed down in the state court.  Accordingly, Rule 60 is inapplicable to the present matter.

### B.    Statute of Limitations

A threshold issue for the Court is whether these proceedings are time-barred by the applicable statute of limitations.  The time-bar issue is to be resolved before considering other procedural issues or the merits of any habeas claim.  *See White v. Klitzkie*, 281 F. 3d 920, 921-22 (9th Cir. 2022).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a one-year limitations period applies to petitions filed by state prisoners under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244.  Absent a reason to apply one of the other "trigger" dates in 28 U.S.C. § 2244(d)(1),[2] Clawson's federal petition had to be filed within one year of the date his conviction became final. 28 U.S.C. § 2244(d)(1)(A).  A conviction becomes final upon conclusion of direct

---

[2] The limitations period under 2244(d)(1) is triggered and begins to run from the latest of: (A) the date on which the underlying judgment became final through either the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which any impediment to the filing of a federal petition created by unconstitutional state action is removed; (C) the date on which a newly recognized and retroactively applicable constitutional right was first recognized by the United States Supreme Court; or (D) the date on which the factual predicate underlying a claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

review. *Id.*

As set forth above, Clawson timely filed a direct appeal. The Montana Supreme Court affirmed his conviction on October 19, 1989. He then had ninety days, or until Thursday, January 18, 1990, to file a petition for writ of certiorari with the United States Supreme Court. *See* Sup. Ct. R. 13. Because Clawson did not file a petition for writ of certiorari, AEDPA's one-year statute of limitations began to run the next day, on January 19, 1990, and expired on January 19, 1991. *Bowen v. Roe*, 188 F. 3d 1157, 1158-59 (9th Cir. 1999) (holding that AEDPA's one-year limitations period begins to run on the date "when the period within which the prisoner can petition for a writ of certiorari from the United States Supreme Court expires."). In other words, Clawson was required to file his petition for federal habeas relief by January 19, 1991. But as set forth above, he filed in this Court on November 2, 2023; more than thirty years too late.

AEDPA expressly provides for statutory tolling of the limitations period when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A collateral review petition is "properly filed" when its delivery and acceptance are in compliance with state rules governing filings. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). As set forth above, the record does not show that Clawson filed a postconviction petition or otherwise sought collateral review. Thus, it does

8

not appear that Clawson is entitled to statutory tolling.

Accordingly, these proceedings are untimely unless Clawson demonstrates that equitable tolling and/or the actual innocence gateway apply to render his petition timely filed.

### i.   Equitable Tolling

The U.S. Supreme Court has held "that § 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Id.* at 645-46.  A petitioner bears the burden of establishing that equitable tolling is warranted. *Pace v. DiGuglielmo*, 544 U.S. 208, 418(2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

The Ninth Circuit Court of Appeals will permit equitable tolling of AEDPA's limitations period "only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing." *Smith v. Davis*, 953 F.3d 582, 600 (9th Cir. 2020) (en banc).  Put another way, for equitable tolling to apply, a petitioner must show "(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way" to

9

prevent him from timely filing a federal habeas petition. *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418). To meet the first prong, Clawson "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith*, 953 F.3d at 598-99. The second prong is met "only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing." *Id.* at 600.

The crux of Clawson's 2254 petition turns on the acts of the former director of the Montana State Crime Laboratory, Arnold Melnikoff. It was ultimately determined that there were problems with testimony he provided in criminal proceedings, in particular flawed hair analysis. A letter from the Arizona Attorneys for Criminal Justice Project, dated January 18, 2005, was sent to Clawson. (Doc. 1-2 at 5.) Enclosed with the letter was a September 10, 2003, news article from the Seattle Post Intelligencer detailing an investigation into Melnikoff following two exonerations in Montana criminal cases, in both matters Melnikoff had provided expert testimony. The article details problems with Melnikoff's forensic analysis and recommended he be fired from his then-position in Washington state. (*Id.* at 6-7.)

For reasons unexplained, Clawson claims he did not receive this letter until

10

2016. It was apparently not until then that Clawson learned of Melnikoff's wrongdoing, which he believes necessarily establishes his own wrongful conviction. (*Id.* at 12.) Clawson claims it was the threat of DNA evidence linking him to the crimes, that caused him to admit guilt. (*Id.* at 12-3.)

Upon learning of this information, Clawson states he contacted his original attorney, Edmund Sheehy, who allegedly "subverted his attempts to redress his erroneous convictions and sentences." (Doc. 5 at 9.) Clawson suggests that his limited access to judicial resources and his incarceration in Arizona frustrated his attempts at relief. (*Id.*) But a prisoner's pro se status, limited legal resources, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. *Rasberry*, 448 F.3d at 1154.

Clawson claims he acted with due diligence once he learned about the Melnikoff information and faults the State for not affirmatively notifying him of Melnikoff providing flawed testimony in other cases. (Doc. 5 at 15-18.) In support of this contention, Clawson provides a letter that he apparently sent to the Lewis and Clark Clerk of Court, the "the original court of subject matter jurisdiction," (*id.* at 16), detailing his attempts at relief. (Doc. 5-1 at 2-4.) Accepting Clawson's account of his actions as true, this letter was sent sometime in 2022, or possibly later, as in the document he references a motion he attempted

11

to file in 2022.  (*Id.* at 2.)  Thus, at a minimum, it took Clawson at least six years to take action by contacting the state court, following receipt of the Melnikoff information.

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citations and quotations omitted).  Whether to apply the doctrine of equitable tolling " 'is highly fact-dependent,' and [the petitioner] 'bears the burden of showing that equitable tolling is appropriate.'"  *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005) (internal citations omitted); *see also Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that equitable tolling is "unavailable in most cases," and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule") (citations and internal emphasis omitted).

In addition, there must be a causal link between the extraordinary circumstance and the inability to timely file the petition. *Sossa v. Diaz*, 729 F.3d 1225, 1229 (9th Cir. 2013) ("[E]quitable tolling is available only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of the prisoner's untimeliness.").  A literal impossibility to file, however, is not required. *Grant v. Swarthout*, 862 F.3d 914, 918 (9th Cir. 2017) (stating that equitable

12

tolling is appropriate even where "it would have technically been possible for a prisoner to file a petition," so long as the prisoner "would have likely been unable to do so").

Even if, as Clawson suggests, the belated discovery of the Melnikoff information constitutes an extraordinary circumstance and, accordingly, Clawson was unable to file a petition until 2016, he still does not adequately explain the subsequent delay in filing. That is, there is no rationale provided for why it took him six years, until 2022, to contact the state court. It then took him an additional year to file for habeas relief in this Court. Clawson does not explain why he was prevented from timely filing a habeas petition upon learning of the Melnikoff information. Thus, he has not met the "very high threshold" of establishing that extraordinary circumstances beyond his control made it impossible for him to timely file a habeas petition and that the same extraordinary circumstances were the cause of his untimeliness. *Pace*, 544 U.S. at 418. Accordingly, equitable tolling is not appropriate on this record; Clawson cannot avail himself of the doctrine to render his petition timely.

### ii.    Actual Innocence

In *McQuiggin v. Perkins*, 569 U.S. 383, 391-396 (2013), the Supreme Court held that the "actual innocence gateway" to federal habeas review that applies to procedural bars in *Schlup v. Delo*, 513 U.S. 298, 327 (1995), and *House v. Bell*,

547 U.S. 518 (2006), extends to petitions that are time-barred under AEDPA. *See Schlup*, 513 U.S. at 329 (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.").

A petitioner claiming actual innocence must satisfy the *Schlup* standard by demonstrating "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee v. Lampert*, 653 F. 3d 929, 938 (9th Cir. 2011) (en banc). In the federal habeas context "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). To make a credible claim of actual innocence, petitioner must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The habeas court then considers all the evidence: old and new, incriminating and exculpatory, admissible at trial or not. *House*, 547 U.S. at 538. On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 330).

The miscarriage of justice exception "is limited to those *extraordinary* cases

14

where the petitioner asserts his [actual] innocence and establishes that the court

cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541

F. 3d 933, 937 (9th Cir. 2008). "[A] credible showing of actual innocence may

allow a prisoner to pursue his constitutional claims [ ...] on the merits

notwithstanding the existence of a procedural bar to relief." *McQuiggin,* 569 U.S.

at 392. "This rule, or fundamental miscarriage of justice exception, is grounded in

the 'equitable discretion' of habeas courts to see that federal constitutional errors

do not result in the incarceration of innocent persons." *Id.* (quotations omitted).

The Supreme Court has explicitly stated that the miscarriage of justice exception

"applies to a severely confined category" cases in which new evidence shows 'it is

more likely than not that no reasonable juror would have convicted the petitioner.'"

*Id.* at 395 (quotations and citations omitted).

As an initial matter, there is no indication that Melnikoff testified at

Clawson's trial or that it was his forensic investigation that uncovered DNA

evidence linking Clawson to the crime scene. Clawson's filing suggests that the

only piece of evidence linking him to the criminal acts was DNA, the nature or

etiology of which he does not identify, that then apparently led to a "coerced

confession." Clawson however overlooks the fact that he testified in his own

defense at trial and admitted to kidnapping of L.B. and committing sexual acts

without consent. His defense, however, was that despite the acts to which he

15

admitted, he did not intend to commit deliberate homicide. *See Clawson*, 239 Mont. at 416, 422. These facts are fatal to Clawson's actual innocence claim.

The Montana Supreme Court noted in its opinion:

> We emphasize that the record is devoid of any evidence, or even suggestion of evidence, which demonstrates consent or participation in any of the conduct by L.B. The bestiality of the conduct on the part of defendant is overwhelmingly present in the record. We are unable to comprehend the lack of consideration for another human being which was demonstrated by defendant, and *which is apparent even from his own testimony*. In the event that defendant finds it appropriate to seek further review, we invite any federal court to review the extensive transcript in order to gain an adequate understanding of the facts of this case.

*Id.* at 416 (emphasis added). Moreover, apparently during his direct examination Clawson discussed a conversation he had with L.B. when they were in the vehicle together and he told her that he did not know why he was doing what he was doing, that he had recently been released from jail for engaging in similar acts and that "[i]t happens every time [he] see[s] an attractive woman." *Id.* at 421.

Clawson has presented no information that would establish that he is actually innocent of the offenses of conviction. Pointing to Melnikoff's bad acts in other matters does not remove the role Clawson himself played in the underlying offenses or the admissions he made in open court. Accordingly, this is not the extraordinary case where Clawson has presented compelling evidence of his actual innocence. *See Schlup*, 513 U.S. at 321. Clawson's assertions and conjecture at this late date do not constitute conclusive evidence of innocence, nor can he show

16

that no reasonable juror could have convicted him in light of this new evidence. *See McQuiggin*, 569 U.S. at 399. Because Clawson has failed to meet his burden, he is not entitled to an equitable exception to the statute of limitations. The petition remains untimely. Accordingly, this matter will be dismissed with prejudice.

### V.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Clawson has not made a substantial showing that he was deprived of a constitutional right. He has failed to make a colorable claim of equitable tolling or

actual innocence.  Accordingly, his is petition time barred.  Reasonable jurists would find no basis to encourage further proceedings.  A certificate of appealability will be denied.

Based on the foregoing, IT IS ORDERED that:

1.  The Petition (Doc. 1) is DISMISSED with prejudice.

2.  The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3.  A certificate of appealability is DENIED.

DATED this ⅃⅄ day of July, 2024.

_____
Donald. W. Molloy, District Judge
United States District Court